## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| ROLAND MATHIS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:18-01111 |
| WARDEN JOEL ZIEGLER, *et al.*, | ) |
| Defendants. | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendant Zahir's Motion to Dismiss (Document No. 67), filed on May 10, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response the Defendant Zahir's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant in moving to dismiss. (Document No. 69.) Plaintiff filed his Response and Declaration in Support on May 28, 2019. (Document Nos. 70 and 71.) Defendant Zahir filed his Reply on June 5, 2019. (Document No. 79.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant Zahir's Motion should be granted as to Plaintiff's medical malpractice claim.

### FACTUAL AND PROCEDURAL HISTORY

On June 15, 2018, Plaintiff, acting *pro se*[1] and an inmate at FPC Beckley, filed his Application to Proceed Without Prepayment of Fees and Costs. (Document No. 2.) On December

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. See *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed. 652 (1972).

3, 2018, Plaintiff filed his Amended Complaint and Memorandum of Law in Support naming the following as Defendants: (1) Warden Joel Ziegler; (2) Warden Coakley; (3) Warden D.L. Young; (4) DHO Ms. Leslie; (5) Unit Manager Ms. E. Stennett; (6) Unit Manager Mr. Snow; (7) Counselor R. Hawkins; (8) Counselor Mr. Grimes; (9) Case Manager M. Fowler; (10) Case Manager Ms. E. Stock; (11) Officer Williams; (12) Officer James; (13) Officer E. Harvey; (14) Lieutenant Felts; (15) Secretary Ms. Hunter; (16) RN Mr. Rose; (17) Officer Petry; (18) Officer Bragg; (19) Officer Zimmerman; (20) Officer Erskine; (21) P.A. Ellis; (22) Dr. Edwards; (23) Dr. Zahir; (24) RDAP Mr. Carnell; (25) Mr. Stevens, Education Department; (26) Dr. Hall; (27) Officer W. Cooley; and (28) Mail Room Staff. (Document Nos. 12, 13, 13-1, 13-2, 13-3, and 13-4.) First, Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide him with appropriate medical care concerning his left shoulder. (Id.) Second, Plaintiff contends that Defendants violated his First Amendment rights by tampering with, or destroying, his legal mail. (Id.) Third, Plaintiff asserts that Defendants retaliated against him for filing administrative remedies in violation of the First Amendment. (Id.) Fourth, Plaintiff asserts that Defendants used excessive and unnecessary force in violation of the Eighth Amendment. (Id.) Fifth, Plaintiff claims that Defendants engaged in discriminatory conduct in violation of the Equal Protection Clause. (Id.) Finally, Plaintiff alleges that Defendants violated the Americans with Disabilities Act. (Id.) Plaintiff requests monetary relief. (Id.)

  By Order entered on February 19, 2019, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees. (Document No. 14.) The Clerk issued process for the Defendants on the same day. (Document No. 15.) On May 10, 2019, Defendant Zahir filed his Motion to Dismiss and Memorandum in Support. (Document Nos. 67 – 68.) Specifically,

2

Defendant Zahir argues that Plaintiff's claim should be dismissed based upon the following: (1) Plaintiff failed to comply with the West Virginia Medical Professional Liability Act's pre-suit notice requirements (Document No. 68, pp. 2 – 5.); and (2) Plaintiff failed to bring his claims within the two year statute of limitations period under the West Virginia Medical Professional Liability Act ["MPLA"]. (Id., pp. 5 – 6.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 15, 2019, advising him of the right to file a response to Defendant Zahir's Motion to Dismiss. (Document No. 69.) On May 28, 2019, Plaintiff filed his Response and Declaration in Support. (Document Nos. 70 and 71.) On June 5, 2019, Defendant Zahir filed his Reply. (Document No. 79.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at ___ . The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements

3

of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

In his Amended Complaint, Plaintiff alleges he suffered an injury to his left shoulder after falling in the recreation yard at FCC Forrest City on June 20, 2010. (Document No. 13, p. 4 and 10.) Plaintiff states that he reported to medical, where Plaintiff was evaluated, scheduled for an x-

ray, and given a shot for the pain. (Id., p. 10.) Plaintiff alleges that medical staff at Forrest City "said the x-ray showed nothing, and that they were going to schedule him for an MRI, which was not true because the x-ray in fact showed that [Plaintiff] might have a possible fracture." (Id.) Plaintiff states that he was transferred to FPC Beckley one month after his above injury, and prior to his MRI being performed. (Id.) Plaintiff states that he notified FPC Beckley medical staff of his shoulder injury, and medical staff informed Plaintiff that he would be scheduled for an x-ray and MRI. (Id.) Plaintiff states that medical approved his MRI on October 19, 2010, and the surgery by Defendant Zahir (the orthopedic surgeon) was approved on May 2, 2011. (Id., p. 14.) Plaintiff indicates that Defendant Zahir was either employed or contracted by the BOP to provide medical services to inmates. (Id.) Plaintiff alleges that Defendant Zahir said that Plaintiff's "MRI only revealed a tear of the rotator cuff . . . but he had 9 inmates ahead of [Plaintiff]." (Id.) Plaintiff complains that he had to "wait a whole year, until September 8, 2011," for the surgery to be performed by Defendant Zahir. (Id.) Plaintiff complains that prior to his scheduled surgery, Defendant Zahir "told [Plaintiff] that he was not going to do 'the whole surgery,' only the rotator cuff repair, he was not going to fix the shoulder problem." (Id.) Plaintiff explains that Defendant Zahir "went on to say that [Plaintiff] still would not be able to move his shoulder and arm due to the injury, but that the surgery would help the pain a little bit." (Id., p. 15.) Plaintiff states that "he did not know what Dr. Zahir was talking about" because he had been notified of only the rotator cuff tear. (Id.) Plaintiff alleges that Defendant Zahir did not perform Plaintiff's surgery because Plaintiff said he wanted his whole shoulder repaired – not just the rotator cuff. (Id.) Plaintiff states that his surgery was rescheduled and a follow-up x-ray was ordered. (Id.) Plaintiff alleges that the follow-up x-ray showed "new damage." (Id., p. 16.) Plaintiff alleges that Defendant Zahir

cancelled the surgery and requested a second opinion because a possible shoulder replacement was indicated. (Id.) Plaintiff alleges that he "went from a tear in his rotator cuff to needing a whole shoulder replacement because of all the intentional delays to his medical care." (Id.) Plaintiff states that he lost use of his whole left shoulder. (Id., p. 17.) Plaintiff alleges that he was later transferred to Butner Medical Prison, where he was advised he would need a whole shoulder replacement. (Id., pp. 18 – 19.) Plaintiff states that Dr. Hall informed him that "the shoulder looked like it had a history of shoulder dislocation, a lot of wear on the humeral head, suspect of an 'old trauma,' that could relate to displaced bony fragments within the shoulder joint." (Id., p. 19.) Plaintiff alleges that the "excessive bone wear was because the three whole years of delays and ignoring of [Plaintiff's] medical needs at FPC Beckley, where they forced [Plaintiff] to work." (Id.) Plaintiff alleges that although Dr. Hall notified him that a whole shoulder replacement was needed, a shoulder replacement was not an available option due to Plaintiff's age and Plaintiff was not in enough pain to merit such a surgical intervention. (Id.) Plaintiff states that Dr. Hall informed Plaintiff he would be transferred back to FPC Beckley and Plaintiff could discuss the rotator cuff surgery with his "doctor back in West Virginia." (Id., p. 20.) Upon returning to FPC Beckley, Plaintiff alleges that he was again seen by Defendant Zahir. (Id., p. 23.) Plaintiff, however, states that the only action taken by Defendant Zahir was to order x-rays. (Id.) Plaintiff states that medical staff subsequently informed Plaintiff that he would be seeing new orthopedic doctor, which did not occur until March 11, 2016. (Id.) Plaintiff, therefore, argues that Defendant Zahir acted with deliberate indifference and negligence in providing medical treatment for his shoulder injury. (Id.)

In Defendant Zahir's Motion to Dismiss, Defendant Zahir focuses exclusively upon Plaintiff's medical malpractice claim. (Document Nos. 67 and 68.) Specifically, Defendant Zahir

6

argues as follows: (1) Plaintiff failed to comply with the prerequisites of the MPLA; and (2) Plaintiff's claims are time barred under the MPLA. (Id.) As set forth in the Court's Order granting Plaintiff's Motion to Proceed Without Prepayment of Fees, the Court liberally construed Plaintiff's Amended Complaint as setting forth a Bivens claim of deliberate indifference. (Document No. 14.) Defendant Zahir's Motion to Dismiss, however, fails to set forth any arguments for dismissal of the Bivens claim.[2] Although Defendant Zahir may later assert that Plaintiff's Bivens claim is also untimely, Defendant Zahir clearly failed to assert such an argument in the above Motion. (Id.)

**1.  Negligence Claim:**

In the present case, Plaintiff alleges that Defendant Zahir's negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[3] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to

---

[2] In his Amended Complaint, Plaintiff indicated that Dr. Zahir was either employed, or contracted, by the BOP to provide medical services to Plaintiff. (Document No. 13.) Subsequently, the United States has indicated that Dr. Zahir is not currently, nor formerly, employed by the BOP. (Document No. 53, p. 2.) Dr. Zahir does not address this issue in his Motion to Dismiss.

[3]  West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return

filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

In his Amended Complaint, Plaintiff alleges that Defendant Zahir acted with negligence in providing treatment for his shoulder injury. (Document No. 13.) In his Motion, Defendant Zahir contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document Nos. 67 and 68.) Plaintiff does not dispute that he failed to comply with the MPLA. (Document No. 70.) Plaintiff, however, argues that he should be excused from complying with the MPLA based upon his status as a *pro se*, prisoner. (Id.) Plaintiff explains that as a prisoner, it would be very difficult

---

receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

to comply with the requirements of the MPLA. (Id., p. 6.)

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. Id. The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." Id. at 858.

Unlike the facts in Johnson, Plaintiff's allegations of negligence are complex and expert

9

testimony is necessary. See Giambalvo v. United States, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, Plaintiff contends that Defendant Zahir failed to provide appropriate treatment for his shoulder injury. (Document No. 13.) Specifically, Plaintiff complains that Defendant Zahir failed to timely diagnose and treat his fractured shoulder and torn rotator cuff. (Id.) Plaintiff concludes that the foregoing resulted in significate wearing of the bones in his shoulder and the ultimate need for a complete shoulder replacement. (Id.) The undersigned finds that what constitutes appropriate diagnostic testing, timely treatment, risk factors, symptoms, and appropriate treatment options for a fractured shoulder and torn rotator cuff is not within the understanding of lay jurors by resort to common knowledge and experience. See Curtis v. Caraway, 2019 WL 2482174, * 21 (N.D.W.Va. Jan. 28, 2019)(allegations that medical staff failed to timely diagnose and treat inmate's rotator cuff is a complex medical issue which requires a screening certificate of merit.) Neither is it within the knowledge of lay jurors as to the alleged connection in the delay of testing and treatment, and the resulting injuries alleged by Plaintiff. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c).

Next, Plaintiff appears to allege that MPLA is unconstitutional because it unduly restricts prisoners from seeking redress in the Court for medical malpractice claims. (Document No. 70, pp. 4 – 5.) Specifically, Plaintiff argues that the MPLA restricts prisoners from filing suit who are acting *pro se*[4]. (Id.) Plaintiff explains that as a prisoner, he does not have internet access and his

---

[4] Plaintiff also argues that he could not comply with the MPLA because he did not know the name of Dr. Zahir. Although this argument is relevant for purposes of determining the timeliness of Plaintiff's claim, this argument is without merit as to his failure to comply with the MPLA. Plaintiff

ability to comply with the pre-filing requirements of the MPLA is unduly restricted. (Id.) The undersigned views Plaintiff's assertions as an "as-applied" challenge to the constitutionality of the MPLA. See Giarratano v. Johnson, 521 F.3d 298 (4th Cir. 2008); Fisher v. King, 232 F.3d 391, 396 (4th Cir. 2000)(considering inmates' contentions that a Virginia statutory exclusion of inmates from making requests for public records under the Virginia Freedom of Information Act is unconstitutional). To the extent Plaintiff contends that "as-applied" the MPLA burdens his constitutional right of access to the Courts, his claim is without merit. It is well-established that indigent inmates have a constitutional right of access to the Courts. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Access to the Courts must be adequate, effective and meaningful under the Federal Constitution. Bounds, 430 U.S. at 822, 97 S.Ct. at 1495. The undersigned finds that Plaintiff's right of access to the Courts is not burdened through the application of the MPLA in the context in which he finds himself. The MPLA does not exclude claims of inmates. Plaintiff is as entitled and capable of proceeding in Court with a medical negligence claim as anyone else provided he provides a notice of claim and a certificate of merit in conformity with the statute. See Miller v. Patel, 2018 WL 4623149, * 3 (S.D.W.Va. Sep. 26, 2018)(J. Faber); Roseboro v. Felts, 2012 WL 3637406, * 11 (S.D.W.Va. Aug. 22, 2012)(J. Berger). Accordingly, Plaintiff's above "as-applied" constitutional challenge to the MPLA is without merit.

To the extent Plaintiff alleges that the MPLA "as-applied" violates his rights under the

---

acknowledges that he became aware of Dr. Zahir's name in April 2016 and, Plaintiff clearly knew Dr. Zahir's name at the time he filed the instant action. (Document No. 70, p. 11.) Despite his knowledge of Dr. Zahir's identity, Plaintiff filed the instant action without complying with the pre-filing requirements of the MPLA.

Equal Protection Clause, his claim is again without merit.[5] Generally, the Equal Protection Clause prohibits states from creating unreasonable, arbitrary, and invidious classifications. <u>Barefoot v. City of Wilmington</u>, 37 Fed.Appx. 626 (4th Cir. 2002). A law does not violate the Equal Protection Clause if it is rationally related to a legitimate government interest, unless the law employs suspect classification or significantly burdens a fundamental right. <u>Id.</u> In the instant action, there is no suspect classification or significant burdened placed upon a fundamental right. The Fourth Circuit has clearly stated that "[p]risoners are not a suspect class." <u>Roller v. Gunn</u>, 107 F.3d 227, 233 (4th Cir. 1997). Based on a review of the MPLA and Plaintiff's situation, the undersigned finds that the MPLA is rationally related to a legitimate state interest. The Legislature enacted the MPLA in response to a perceived crisis in the availability and affordability of liability insurance for health care providers and the availability of quality health care for patients.[6] W. Va. Code §§ 55-7B-1. The West Virginia Supreme Court determined that "the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims." <u>Hichman v. Gillette</u>, 618 S.E.2d 387, 394, 217 W.Va 378,

---

[5] Plaintiff does not allege that any other person, prisoner or non-prisoner, has been allowed to file a medical liability suit without either filing a screen certificate of merit or meeting the requirements of the exception as set forth in West Virginia Code §55-7B-6(c).

[6] West Virginia Code 55-7B-1 provides that "it is the duty and responsibility of the Legislature to balance the rights of our individual citizen to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers and health care facilities who can themselves obtain the protection of reasonably priced and extensive liability coverage." *Id.* The Legislature further stated that "in recent years, the cost of insurance coverage has risen dramatically while the nature and extent of coverage has diminished, leaving health care facilities and the injured without the full benefit of professional liability insurance coverage."

385 (2005)(finding that the statutory requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts); see also State ex rel. Miller v. Stone, 607 S.E.2d 485, 489, 216 W. Va. 379, 384 (2004)(stating that "the Legislature's clear intent in enacting W. Va. Code § 55-7B-6 was to mandate that a plaintiff in a medical malpractice claim file his or her certificate of merit at least 30 days prior to filing his or her medical malpractice action so as to allow healthcare providers the opportunity to demand pre-litigation mediation"). Further, a statute does not violate the Equal Protection Clause simply because in practice it results in some inequality.[7] See Columbus Bd. of Educ. v. Penick, 443 U.S. 449, 464, 99 S.Ct. 2941, 61 L.Ed.2d. 666 (1979)(A statute's "disparate impact and foreseeable consequences, without more, do not establish a constitutional violation"); Giarratano v. Johnson, 521 F.3d 298 (4th Cir. 2008)(finding that a state prisoner's claim that the statutory exclusion of prisoners from making requests for public records under the Virginia Freedom of Information Act was insufficient to state a claim for an as-applied violation of the equal protection clause; "the situation in which [plaintiff] finds himself is simply a result of the inequality inherent to such "imperfect" laws"). Accordingly, the undersigned finds that Plaintiff's "as-applied" constitutional

---

[7] The West Virginia Supreme Court held that the MPLA provision placing a statutory cap on non-economic loss did not violate the Equal Protection Clause of the West Virginia Constitution. *Verba v. Ghaphery*, 210 W.Va. 30, 552 S.E.2d 406 (2001)(finding that the statutory one million cap on non-economic damage awards in medical malpractice actions did no violate the state equal protection provision); *Robinson v. Charleston Area Medical Center*, 414 S.E.2d 877 (1991)(finding that the statutory cap on non-economic loss awards in medical malpractice cases did not violate malpractice plaintiffs' equal protection rights, either by discriminating between medical professional liability victims and other tort victims, or by discriminating between medical professional liability victims with non-economic loss less than one million and victims with non-economic loss exceeding one million)

challenge to the MPLA is without merit and that Defendant Zahir's Motion to Dismiss should be granted as to Plaintiff's medical negligence claim. The undersigned finds it unnecessary to address Defendant Zahir's untimely argument as asserted for dismissal of Plaintiff's negligence claim.

2. **Bivens Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[8] The United States Supreme Court has held

---

[8] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

Concerning Plaintiff's Bivens claim of deliberate indifference, Plaintiff must file such a Bivens action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Fourth Circuit has recognized that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." McCausland v. Mason County Bd. of Ed., 649 F.2d 278 (4th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Under West Virginia law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[8]

---

Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

[8]  West Virginia Code § 55-2-12 provides as follows:
Every personal action for which no limitation is otherwise prescribed shall be

As stated above, construing Plaintiff's Amended Complaint liberally, the undersigned finds that Plaintiff is asserting an Eighth Amendment claim of deliberate indifference to his medical needs and a state law claim of medical malpractice. Concerning Plaintiff's state law claim of medical malpractice, Plaintiff claim is subject to a two-year statute of limitations. See W. Va. Code § 55-7B-4. In his Motion to Dismiss, Defendant Zahir specifically argues that Plaintiff's claim is untimely under the MPLA (W. Va. Code § 55-7B-4). At this time, however, Defendant Zahir fails to assert any argument of untimeliness concerning Plaintiff's Bivens claim. The undersigned notes that Defendant Zahir is represented by counsel and the Court has no duty to liberally construe any filings by Defendant Zahir. Based upon the foregoing, the undersigned respectfully recommends that Defendant Zahir's Motion to Dismiss be granted as to Plaintiff's medical malpractice claim and the matter be referred back to the undersigned for further proceedings on Plaintiff's Bivens claim against Defendant Zahir.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendant Zahir's Motion to Dismiss (Document No. 67) concerning Plaintiff's medical malpractice claim, and **REFER** the matter back to the undersigned for further proceedings.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is

---

brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 13, 2019.

_____
Omar J. Aboulhosn
United States Magistrate Judge