## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| ROLAND MATHIS, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )    Civil Action No. 5:18-01111 |
| | ) |
| WARDEN JOEL ZIEGLER, *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are Defendants Ziegler, Coakley, Young, Leslie, Stennent, Snow, Hawkins, Grimes, Fowler, Jones (formerly Stock), Harvey, Felts, Hunter, Rose, Petrey, Bragg, Zimmerman, Erskine, Ellis, Edwards, Carnell, Stevens, Hall, and Cooley's ["BOP Defendants"] "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (Document No. 132) and Defendant Zahir's Motion to Dismiss (Document No. 141). The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document Nos. 134 and 143.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motions (Document Nos. 132 and 141) should be granted.

### PROCEDURAL HISTORY

On June 15, 2018, Plaintiff, acting *pro se*, filed in the Northern District of Georgia his Application to Proceed Without Prepayment of Fees or Costs and a Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents

of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) On the same day, Movant also filed a Motion to Amend. (Document No. 4.) By Order entered on July 3, 2018, the Northern District of Georgia transferred the above matter to this Court. (Document No. 5.) By Order entered on November 1, 2018, the undersigned granted Plaintiff's Motion to Amend. (Document No. 11.)

On December 3, 2018, Plaintiff filed his Amended Complaint and Memorandum of Law in Support, naming the following as Defendants: (1) Warden Joel Ziegler; (2) Warden Coakley; (3) Warden D.L. Young; (4) DHO Ms. Leslie; (5) Unit Manager Ms. E. Stennett; (6) Unit Manager Mr. Snow; (7) Counselor R. Hawkins; (8) Counselor Mr. Grimes; (9) Case Manager M. Fowler; (10) Case Manager Ms. E. Stock; (11) Officer Williams; (12) Officer James; (13) Officer E. Harvey; (14) Lieutenant Felts; (15) Secretary Ms. Hunter; (16) RN Mr. Rose; (17) Officer Petry; (18) Officer Bragg; (19) Officer Zimmerman; (20) Officer Erskine; (21) P.A. Ellis; (22) Dr. Edwards; (23) Dr. Zahir; (24) RDAP Mr. Carnell; (25) Mr. Stevens, Education Department; (26) Dr. Hall; (27) Officer W. Cooley; and (28) Mail Room Staff[1]. (Document Nos. 12, 13, 13-1, 13-2, 13-3, and 13-4.) First, Plaintiffs alleges that Defendants violated his Eighth Amendment rights by failing to provide him with appropriate medical care. (Id.) Second, Plaintiff contends that

---

[1] In his Amended Complaint, Plaintiff named "Mail Room Staff" as a defendant. The undersigned notified Plaintiff if he was unaware of the names of the relevant individuals, a plaintiff should designate in the case caption each individual whose name is unknown as a John Doe or Jane Doe (e.g. Correctional Officer John Doe) and shall further identify each individual in the body of the Complaint by description, date/time of contact, alleged act, or in some other manner that assists the court in determining the identity and number of individual defendants in the action, as well as the specific reason that each individual defendant is included in the Complaint. The Court further notified Plaintiff that service of process could not be effectuated on "Mail Room Staff" or on "John Doe" or "Jane Doe" defendants. Thus, the Court informed Plaintiff if a defendant is not served, Plaintiff will not be able to prevail on his claim against that person. Finally, the Court notified Plaintiff that it was Plaintiff's responsibility, and not the duty of the Court, to ascertain the identities and addresses of those individuals whom Plaintiff believes caused him injury.

Defendants violated his First Amendment rights by tampering with, or destroying, his legal mail. (Id.) Third, Plaintiff asserts that Defendants retaliated against him for filing administrative remedies in violation of the First Amendment. (Id.) Fourth, Plaintiff asserts that Defendants used excessive and unnecessary force in violation of the Eighth Amendment. (Id.) Fifth, Plaintiff claims that Defendants engaged in discriminatory conduct in violation of the Equal Protection Clause. (Id.) Finally, Plaintiff alleges that Defendants violated the Americans with Disabilities Act. (Id.) Plaintiff requests monetary relief. (Id.)

By Order also entered on February 19, 2019, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 11.) The Clerk issued process on the same day. (Document No. 15.) On May 10, 2019, Defendant Zahir filed his Motion to Dismiss and Memorandum in Support. (Document Nos. 67 – 68.) Specifically, Defendant Zahir argued that Plaintiff's claim should be dismissed based upon the following: (1) Plaintiff failed to comply with the West Virginia Medical Professional Liability Act's pre-suit notice requirements (Document No. 68, pp. 2 – 5.); and (2) Plaintiff failed to bring his claims within the two year statute of limitations period under the West Virginia Medical Professional Liability Act ["MPLA"]. (Id., pp. 5 – 6.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 15, 2019, advising him of the right to file a response to Defendant Zahir's Motion to Dismiss. (Document No. 69.) On May 28, 2019, Plaintiff filed his Response and Declaration in Support. (Document Nos. 70 and 71.) On June 5, 2019, Defendant Zahir filed his Reply. (Document No. 79.) By Proposed Findings and Recommendation entered on November 13, 2019, the undersigned recommended that Defendant Zahir's Motion to Dismiss should be granted as to Plaintiff's medical malpractice claim and referred back to the undersigned for further proceedings as to Plaintiff's Bivens claim against

Defendant Zahir. (Document No. 122.) On December 4, 2019, Plaintiff filed his Objections. (Document No. 123.) By Order entered on February 6, 2020, United States District Judge Frank W. Volk adopted the undersigned's recommendation and dismissed Plaintiff's medical malpractice claim against Defendant Zahir. (Document No. 135.)

On February 4, 2020, BOP Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 132 and 133.) BOP Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) Plaintiff failed to fully exhaust his administrative remedies (Document No. 133, pp. 5 – 9.); (2) "Plaintiff's claims are time barred by the statute of limitations" (Id., pp. 9 – 11.); (3) "Plaintiff's allegations are not cognizable under Bivens" (Id., pp. 11 – 19.); (4) "Plaintiff's claims are not cognizable under the ADA" (Id., pp. 19 – 20.); (5) "Plaintiff failed to exhaust administrative remedies for his ADA claims" (Id., pp. 20 – 22.); (6) "Plaintiff has not sufficiently pled a cause of action for any constitutional violation" (Id., pp. 22 – 33.); (7) Plaintiff's equal protection claim is insufficient on its face" (Id., pp. 33 – 34.); (8) There is no evidence of deliberate indifference to Plaintiff's medical conditions (Id., pp. 34 – 46.); (9) "Plaintiff allegations must fail as to medical malpractice claims because he failed to file a screening certificate of merit" (Id., pp. 46 – 48.); and (10) "Defendants are entitled to qualified immunity" (Id., pp. 48 – 49.).

As Exhibits, BOP Defendants attach the following: (1) The Declaration of Tiffanie Little (Document No. 132-1, pp. 2 – 5.); (2) A copy of Plaintiff's "Inmate History ADM-REL" (Id., pp. 7 – 8.); (3) A copy of Plaintiff's Inmate History Correctional Counselor (Id., p. 10.); (4) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" (Id., pp. 12 – 14.); (5) A copy of Plaintiff's "Unit Disciplinary Packet for Incident Report 2490356 (Id., pp. 16 - 18; (6) A copy of Remedy ID No. 855211-F1 (Id., pp. 20 – 21.); (7) A copy of Remedy ID No. 855211-R1 (Id., pp.

23 – 24.); (8) A copy of Remedy ID No. 855211-R2 (Id., pp. 26 – 27.); (9) A copy of Remedy ID No. 855214-F1 (Id., pp. 29 – 30.); (10) A copy of Remedy ID No. 855214-R1 (Id., pp. 32 – 33.); (11) A copy of Remedy ID No. 855214-R2 (Id., pp. 35 – 36.); (12) A copy of Remedy ID No. 855214-R3 (Id., pp. 38 – 39.); (13) A copy of Remedy ID No. 855214-R4 (Id., pp. 41 – 42.); (14) A copy of Plaintiff's Inmate History Quarter (Id., pp. 44 – 45.); (15) A copy of the Declaration of Dr. Roger Edwards (Id., pp. 47 – 53.); and (16) A copy of Plaintiff's relevant medical records (Id., pp. 57 – 287.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 5, 2020, advising him of the right to file a response to BOP Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 134.) On February 18, 2020, Defendant Zahir filed his "Motion to Dismiss Plaintiff's Bivens Claim" and Memorandum in Support. (Document Nos. 141 and 142.) Defendant Zahir argues that Plaintiff's Bivens claim should be dismissed based on the following: (1) Plaintiff's claim is time-barred; and (2) "Dr. Zahir was not acting as a federal agent, and therefore, Plaintiff cannot sustain a Bivens action against him." (Id.) As an Exhibit, Defendant Zahir attaches a copy of his Affidavit. (Document No. 141-1.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 18, 2020, advising him of the right to file a response to Defendant Zahir's Motion to Dismiss. (Document No. 143.) Despite being granted two extensions of time, Plaintiff has failed to file a timely response to either of the above Motions.[2] (Document

---

[2]  The undersigned notes that this Court granted Plaintiff very generous extensions of time, which provided Plaintiff with more than four months to respond to Defendants' Motions. On June 26, 2020, Plaintiff filed Objections to Orders entered by the undersigned on February 4, 2020, April 30, 2020, and May 27, 2020. The undersigned notes that these Orders denied non-dipositive motions. In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiff had fourteen (14) days to file objections to the above Orders.

No. 145 and 152.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1. **Bivens Claim:**

    A. **Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general

---

[3] 42 U.S.C. § 1997e(a) provides as follows:
> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that

prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(<i>overruled on other grounds</i>), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See <u>Jones v. Bock</u>, <u>supra</u>;

Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may

seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate

11

is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, BOP Defendants acknowledge that Plaintiff filed several administrative remedies but argue that Plaintiff only fully exhausted his administrative remedies concerning the Unit Discipline Committee's ["UDC'] findings related to Incident Report No. 2490356. (Document No. 133, pp. 5 – 9.) Despite Plaintiff's claim that BOP staff either refused to accept his remedy filings or destroyed them during his confinement at FCI Beckley, BOP Defendants argue that the record refutes this claim. (Id.) During the period Plaintiff claims that forms were refused or destroyed, BOP Defendants explain that Plaintiff filed ten administrative remedies. (Id., p. 9.) Specifically, BOP Defendants explain that Plaintiff filed administrative remedies on the following dates: October 7, 2013: October 11, 2013; December 4, 2013; March 11, 2014; March 13, 2014; March 14, 2016; April 4, 2016; May 4, 2016; August 18, 2016; and September 26, 2016. (Id.) BOP Defendants note that "those remedies that were rejected were rejected due to Plaintiff's errors in submitting the forms, not due to any staff interference." (Id.) Thus, BOP Defendants argue that administrative remedy process was available to Plaintiff and he should not be excused from exhausting his remedies. (Id.)

In support, BOP Defendants submit the Declaration of Tiffanie Little, a Legal Assistant for the BOP. (Document No. 132-1, pp. 2 – 4.) Ms. Little declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Specifically, Ms. Little states as follows in her Declaration:

> 11.    I have reviewed Plaintiff's Administrative Remedy Retrieval Form and discovered Plaintiff has filed or attempted to file several administrative

remedies while in BOP custody.

12.    Plaintiff filed Remedy ID No. 752620-F1 to the institutional level on
       October 7, 2013, in which Plaintiff challenged the findings in a Unit
       Discipline Committee ("UDC") action related to his incident report number
       2490356 in which he had been found to have committed the prohibited act
       of being insolent to staff in violation of BOP disciplinary code number 312.
       This remedy was rejected the same day. However, he refiled the Remedy
       ID No. 752620-F2, on October 11, 2013, and it was closed and a response
       provided on November 13, 2013.

13.    On December 4, 2013, Plaintiff appealed the response at the regional level
       with Remedy ID No. 752620-R1. A response was provided on January 28,
       2014. On March 11, 2014, Plaintiff appealed to the Central Office level with
       Remedy ID No. 752620-A1. A response was provided on September 22,
       2015. Plaintiff exhausted his remedies in relation to the UDC findings
       related to incident report number 2490356 on September 22, 2015.

14.    Plaintiff has attempted to file administrative remedies related to complaints
       of staff misconduct. Specifically, he has filed Remedy No. 855211-F1 at the
       institutional level on March 14, 2016. The Remedy was rejected the same
       day as containing an improper subject matter. He also filed Remedy Nos.
       855211-R1 and R2 at the regional level on April 4, 2016, and May 4, 2016.
       These remedies were rejected for failing to attach a copy of the institutional
       Administrative Remedy Request form or a copy of the institutional response
       from the Warden.

15.    Plaintiff has also attempted to file another series of Administrative
       Remedies related to staff misconduct. He has filed institutional
       Administrative Remedy No. 855214-F1 on March 13, 2016, which was
       rejected the same day for submitting more than one letter size continuation
       page to his form. He subsequently filed Administrative Remedy Nos.
       855214-R1, R2, R3, and R4 on April 4, 2016, May 4, 2016, August 18,
       2016, and September 26, 2016. These Remedies were rejected because he
       did not attach the institutional level response.

16.    Plaintiff did not further pursue any remedies. Accordingly, he has not
       exhausted his Administrative Remedies regarding the allegations in his
       Complaint other than his challenge to the UDC findings related to incident
       report 2490356.

(Id., p. 4.) As Exhibits, Ms. Little attaches a copy of Plaintiff's Administrative Remedy History

and Administrative Remedy ID Nos. 855211 and 855214. (Id., 12 – 42.)

Plaintiff failed to file a Response disputing that he failed to exhaust his available administrative remedies concerning all claims except any related to the UDC findings concerning Incident Report No. 2490356. A review of the record reveals that administrative remedies process was available to Plaintiff and Plaintiff failed to exhaust those available remedies. With the exception of a claim related to Incident Report No. 2490356, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA as to all other Bivens claims set forth in Plaintiff's Amended Complaint (claims under the Eighth Amendment, First Amendment, and Equal Protection Clause of the Fourteenth Amendment). Plaintiff has clearly failed to produce any documents indicating that he exhausted the foregoing Bivens claim, or that the administrative process was rendered unavailable. Based on the foregoing, the undersigned recommends that Plaintiff's Bivens claim regarding the foregoing issues (Eighth, First, and Fourteenth Amendment claims) be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing the above action.

### B.    Claims based upon Incident Report No. 2490356:

To the extent Plaintiff has asserted a claim based upon Incident Report No. 2490356, BOP Defendants argue that such a claim is untimely. (Document No. 133, pp. 8 – 9.) Since there is no federally prescribed statute of limitation for a Bivens action, Courts look to and apply their respective State's statutes of limitation. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 261, 85 L.Ed.2d 254 (1985)(*overruled on other grounds by,* Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)). Under West Virginia law, the applicable

period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[4] Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Bivens action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

---

[4]    West Virginia Code § 55-2-12 provides as follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Furthermore, courts look to State law to determine whether the statute of limitations is tolled with respect to Plaintiff's <u>Bivens</u> claim and state law claims. <u>Wallace v. Kato</u>, 549 U.S. 384, 394 (2007)("We have generally referred to state law for tolling rules, just as we have for the length of the statute of limitations."); <u>Rakes v. Rush</u>, 2009 WL 2392097, * 5 (S.D.W.Va. Aug. 4, 2009)(J. Copenhaver)(citing <u>Board of Regents v. Tomanio</u>, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). West Virginia recognizes the discovery rule, which tolls the statute of limitations until a claimant knows or by reasonable diligence should know his claim. <u>See</u> <u>Gaither v. City Hospital, Inc.</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997); <u>also see</u> <u>Dunn v. Rockwell</u>, 225 W.Va. 43, 53, 689 S.E.2d 255, 265 (2009). The West Virginia Supreme Court discussed the proper application of the discovery rule as follows:

> [T]he statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breach that duty, and (3) that the conduct of that entity has a causal relation to the injury.

<u>Dunn v. Rockwell</u>, 225 W.Va. 43, 52-53, 689 S.Ed.2d 255, 264-65(2009)(quoting <u>Gaither v. City Hospital, Inc.</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997)). Typically, a "plaintiff will 'discover' the existence of a cause of action, and the statute of limitations will begin to run, at the same time that the actionable conduct occurs." <u>Id.</u>, 225 W.Va. at 53, 689 S.Ed. 2d at 265. A plaintiff is "charged with knowledge of the factual, rather than the legal, basis for the action." <u>Id.</u> The issue of "whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test" focusing on "whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, the elements of a possible cause of action." <u>Id.</u> Generally, a determination concerning the application of the discovery rule requires "resolution of factual questions by the trier of fact."

16

Id.

It is undisputed that Plaintiff fully exhausted his challenge to Incident Report No. 2490356 on September 22, 2015. See Battle v. Ledford, 912 F.3d 708 (4th Cir. 2019)(finding that the Section 1983 limitations period was equitably tolled during the PLRA exhaustion period). Thus, Plaintiff clearly had knowledge of any alleged injuries concerning Incident Report No. 2490356 prior to September 22, 2015, and the limitations period began to run no later than September 23, 2015 (the day after Plaintiff's exhausted his administrative remedies). Plaintiff filed his original Complaint in the Northern District of Georgia on June 15, 2018, more than two-years after the exhaustion process had concluded. To the extent Plaintiff is seeking relief for a claim based upon Incident Report No. 2490356, the undersigned finds that such a claim is untimely and should be dismissed. The undersigned finds it unnecessary to consider the other reasons which the BOP Defendants have submitted for dismissal regarding Plaintiff's Bivens claim.

**C.    Defendant Zahir:**

In his Motion, Defendant Zahir argues that Plaintiff's Bivens claim should be dismissed based on the following: (1) Plaintiff's claim is time-barred; and (2) "Dr. Zahir was not acting as a federal agent, and therefore, Plaintiff cannot sustain a Bivens action against him." (Document Nos. 141 and 142.) Plaintiff has failed to file a Response addressing either of the above arguments.

*(i)    Not a Federal Actor:*

In his Motion, Defendant Zahir states that he is not an employee of the BOP. (Document No. 142, p. 7.) Thus, Defendant Zahir states that Bivens liability should not be extended to him because he "was not employed by the BOP and rather was a private physician who only had a contractual relationship whereby the provided occasional consultations services to inmates." (Id.)

17

Defendant Zahir further states that Plaintiff's allegations amount to a claim of medical negligence under the MPLA. (Id.) Therefore, Defendant Zahir states that Plaintiff had an adequate remedy under state law. (Id.)

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

In determining whether <u>Bivens</u> liability can be imposed upon Defendant Zahir, the undersigned must consider the Fourth Circuit's decision in <u>Holly v. Scott</u>, 434 F.3d 287 (4th Cir. 2006). In considering whether <u>Bivens</u> may apply to a private individual, the Fourth Circuit stated as follows:

> Neither we nor the Supreme Court has had occasion to consider whether and to what extent <u>Bivens</u> liability may apply to private citizens. As a threshold matter, we harbor some doubt as to whether such liability would ever be appropriate. Each of the defendants in <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> were in the direct employ of the federal government.

<u>Id.</u> at 291. The Fourth Circuit noted that the Supreme Court has "responded cautiously to suggestion that <u>Bivens</u> remedies should be extended into new contexts" and has extended <u>Bivens</u> only twice in 30 years.[5] <u>Id.</u> at 289. The Fourth Circuit reasoned that a <u>Bivens</u> "cause of action is implied without any express congressional authority whatsoever" and "a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." <u>Id.</u>(citing <u>Sosa v. Alverez-Machain</u>, 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004)). Recently, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that

---

[5] In *Bivens*, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in *Bivens*, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since *Carlson*, the Supreme Court has consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants. *See FDIC v. Meyer*, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend *Bivens* to permit suit against a federal agency); *Holly*, 434 F.3d at 290 (declining to extend *Bivens* to an Eighth Amendment claim against employees of a privately operated prison); *Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012)(declining to extend *Bivens* in a military context).

19

"expanding the Bivens remedy is now a disfavored judicial activity." Ziglar v. Abbasi, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017).

Assuming the claim is a new Bivens context, the Court must determine whether Bivens should be extended to the new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a Bivens action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy). Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865.

In Holly, the Fourth Circuit determined that two factors counseled hesitation independently precluding the extension of Bivens: (1) Defendants were private individuals, not government

20

actors; and (2) Plaintiff had an adequate remedy against defendants under state law. Holly, 434 F.3d at 290 (Bivens does not provide federal inmates with a cause of action against employees of a private corporation operating a prison). In discussing the first factor counseling hesitation, the Fourth Circuit stated that defendants' actions were not "fairly attributable" to the federal government. Id. at 290. The Fourth Circuit explained that it was undisputed that defendants were employees of "a wholly private corporation in which the federal government has no stake other than a contractual relationship." Id. at 291. Thus, the Fourth Circuit stated that "[w]e decline to extend Bivens to impute liability in such circumstances." Id.("Neither we nor the Supreme Court has had occasion to consider whether and to what extent Bivens liability may apply to private citizens. As a threshold matter, we harbor some doubt as to whether such lability would ever be appropriate.") Next, the Fourth Circuit then explained that "[e]ven assuming that Bivens liability is sufficiently expansive to encompass at least some private individuals, our constitutional scheme necessarily constrains its scope." Id. at 292. Although the Fourth Circuit recognized "[t]here exist amply reason to be even more cautious about imputing liability to private actors under Bivens than under § 1983," the Fourth Circuit discussed liability of private persons under Section 1983. Id. at 292(noting that Section 1983 is a congressional enactment expressly creating lability for individuals acting under color of state law, and Bivens is a device of judicial creation). Under Section 1983, courts have limited liability of private persons through the application of the state action doctrine. Id. at 291-92(citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 935, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Under the state action doctrine, liability does not result unless the "conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." Id. There is no specific formula for determining whether state action is present. Id. at 293(citing Hicks

v. S. Md. Health Sys. Agency, 737 F.2d 399, 402 (4ᵗʰ Cir. 1984)). A variety of factors may be considered when determining what action is fairly attributable to a state. Id. The Supreme Court has stated that a the "dispositive issue concerns the relationship among the State, the physician, and the prisoner." West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)(finding that a "physician who was under contract with state to provide medical services to inmates at state prison hospital on part-time basis acted under color of state law, within meaning of § 1983").[6] In Holly, the Fourth Circuit found that the defendants' actions were not of a "sufficiently federal character to create constitutional liability" because (1) the defendants were employees of a wholly private corporation, (2) other than a contractual relationship, the federal government had no interest in the private corporation, and (3) there was no allegation that federal policy resulted in defendants' failure to provide adequate medical care. Holly, 434 F.3d. at 294. Therefore, the Fourth Circuit concluded that "even if there did exist circumstances where a private party could be subject to liability under Bivens . . . the doctrine of state action compels us to refrain from extending Bivens liability to the individual employees of a private corporation operating a correctional facility." Id.

In discussing the second factor counseling hesitation in Holly, the Fourth Circuit explained that plaintiff "possesses alternative - and arguably superior - causes of action against defendants

---

[6] The Fourth Circuit warned that "[t]here exists amply reason to be even more cautious about imputing liability to private actors under *Bivens* than under § 1983. Section 1983 is a congressional enactment that expressly creates liability for '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia' deprives an individual of any 'rights, privileges, or immunities secured by the Constitution' or other federal law. *Bivens*, on the other hand, is a devise of judicial creation . . . the Supreme Court 'has never expressly held that the controls of *Bivens* and § 1983 are identical." *Holly*, 434 F.3d at 292.

under the state law of negligence." Id. at 295. The Supreme Court has extended Bivens in only two circumstances: (1) "[T]o provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct;" and (2) "[T]o provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally." Id. at 295-96(citing Correctional Services Corp. v. Malesko, 534 U.S.61, 70, 122 S.Ct.515, 151 L.Ed.2d 456 (2001)). The Fourth Circuit stated that "where these two circumstances are not present, the Court has consistently rejected invitations to enlarge the scope of the judicially created Bivens remedy." Id. at 296. The Fourth Circuit then determined that neither circumstance was present in plaintiff's case because state law provided plaintiff with an alternative remedy, which included a cause of action against individual officers. Id. Therefore, the Fourth Circuit determined that the extension of Bivens was inappropriate. Id. at 297.

In the instant case, Plaintiff alleges that he received medical treatment from Defendant Zahir while he was incarcerated by the BOP. Defendant Zahir, however, states that Bivens liability should not be extended to him because he has never been employed by the BOP. (Document Nos. 141 and 142.) Defendant Zahir explains that he is a private physician, who "only had a contractual relationship whereby the provided occasional consultations services to inmates." (Id.) In support, Defendant Zahir filed his Affidavit. (Document No. 141-1.) In his Affidavit, Defendant Zahir states as follows:

> I have never been an employee of the Bureau of Prisons. At the time I allegedly treated Mr. Mathis, I was a consultant with the Bureau of Prisons. In that role, I was called occasionally by the Bureau of Prisons to consult with prisoners, after which I would provide the Bureau of Prisons my medical opinion regarding the prisoner's diagnosis and recommended course of treatment or treatment options. The Bureau of Prisons would then consider my recommendations and determine the decisions as to the prisoners' care and treatment.

(Id.) In Holly, the Fourth Circuit expressly declined to extend a Bivens action to employees of a wholly private corporation in which the government had no stake other than a contractual relationship. Since Plaintiff's claim is a new Bivens context, the undersigned briefly considers whether Bivens should be extended to the above new context. The Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new *Bivens* remedy.) The undersigned finds that Plaintiff had a remedy against Defendant Zahir under state law.[7] Plaintiff alleges that Defendant Zahir provided inadequate medical care concerning his shoulder. The undersigned finds that Plaintiff's allegations support a cause of action under West Virginia law for medical negligence under the MPLA. W. Va. Code. §§ 55-7B-1. If successful, Plaintiff could recover compensatory and punitive damages. Plaintiff, therefore, had an alternative cause of action against Defendant Zahir under state law. Accordingly, the undersigned finds that Bivens should not be extended to Plaintiff's claims against Defendant Zahir. See O'Neil v. Anderson, 372 Fed.Appx. 400, 404 (4th Cir. 2010)(affirming dismissal of Bivens action against a private doctor

---

[7] The undersigned notes that Plaintiff has pursued a medical negligence claim against Defendant Zahir. This claim, however, was recently dismissed due to Plaintiff's failure to comply with the prerequisites of the MPLA. (Document No. 135.) Plaintiff's failure to comply with the prerequisites of the MPLA, however, does not render such an unavailable state remedy.

that was contracted to provide medical care to a federal prison); <u>Sellers v. St. Joseph Hospital</u>, 2017 WL 4564187, * 3 (N.D.W.Va. June 28, 2017)(dismissing <u>Bivens</u> claim against the independent hospital and the individual private actor physician who treated the inmate); <u>also see</u> <u>Boston v. Bennett</u>, 2018 WL 7078678, * 7 (N.D.W.Va. Dec. 26, 2018)(dismissing <u>Bivens</u> claim against a dentist, who was a contract employee providing dental care to an inmate); <u>Sowers v.</u> <u>United States</u>, 2018 WL 6709509, * 12 (E.D.Va. Dec. 20, 2018)(dismissing FTCA and <u>Bivens</u> claim against an employee of an independent contractor); <u>Brock v. Shearer</u>, 2012 WL 7188893, * 12 (D.S.C. July 25, 2012)(finding that <u>Bivens</u> liability should not be extended to private physicians). The undersigned, therefore, respectfully recommends that Plaintiff's <u>Bivens</u> action against Defendant Zahir be dismissed. Notwithstanding the foregoing, the undersigned will briefly consider whether Plaintiff's <u>Bivens</u> claim would be timely if such a claim could be pursued against Defendant Zahir.

### (ii)    Untimely:

In his Amended Complaint, Plaintiff alleges that he did not learn of the full extent of his injuries suffered in 2010, until he received Dr. Hall's diagnosis on May 17, 2012. (Document No. 13, p. 23 and Document No. 70, p. 3.) Plaintiff explains that Dr. Zahir had only notified Plaintiff that his injury required surgery to repair a torn rotator cuff. (Document No. 13, pp. 13 – 23.) Plaintiff alleges that when he was evaluated by Dr. Hall, and two other doctors at FMP Butner, Plaintiff was notified that he needed a total shoulder replacement. (<u>Id.</u>)

In his Motion to Dismiss, Defendant Zahir argues that Plaintiff's claims are untimely. (Document No. 142, pp. 5 - 6.) Defendant Zahir contends that Plaintiff's claims are subject to a two-year statute of limitations. (<u>Id.</u>) Defendant Zahir states that based on the allegations in

Plaintiff's Complaint, "any injury suffered by Plaintiff occurred in 2011 and he also know of any injury in 2011, when he alleges that Dr. Zahir delayed his treatment for his shoulder injury and only ordered x-rays rather than a shoulder replacement." (Id.) Defendant Zahir states that Plaintiff's Complaint was filed on June 15, 2018, more than two years after the events for which he seeks recovery. (Id.)

As explained in Section 1(B) above, Plaintiff's <u>Bivens</u> claim is subject to a two-year limitations period. The face of Plaintiff's Amended Complaint reveals that Plaintiff clearly had knowledge of the fact of his injury, allegedly caused by Defendant Zahir, no later than May 17, 2012. Plaintiff filed his original Complaint in the Northern District of Georgia on June 15, 2018, well in excess of the two-year limitation period. To the extent Plaintiff could pursue an Eighth Amendment <u>Bivens</u> claim against Defendant Zahir, the undersigned finds that such a claim is untimely and should be dismissed.

**2.    ADA Claim:**

Plaintiff alleges a claim against the BOP Defendants under Title II of the Americans with Disabilities Act ["ADA"]. (Document No. 13.) In their Motion, BOP Defendants argue that Plaintiff's claims are not cognizable under the ADA. (Document Nos. 132 and 133, pp. 19 – 20.) Plaintiff failed to file a Response.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subject to discrimination by an such entity." 42 U.S.C. § 12132(emphasis added). A "public entity" is defined as "a state or local government," "any department, agency, special purpose district, or other instrumentality of a State or States or local

government," or "the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). Thus, the ADA applies to state prisons – not federal prisons. See Pennsylvania Dept. of Corrections v. Yesky, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)("The plain text of Title II of the ADA unambiguously extends to state prison inmates."); Dyrek v. Garvey, 334 F.3d 590, 597 n. 3 (7th Cir. 2003)(find that the ADA does not apply to federal agencies); Cellular Phone Taskforce v. F.C.C., 217 F.3d 72, 73 (2nd Cir. 2000)(same); Crowder v. True, 1993 WL 532455, * 5 (N.D.Ill. Dec. 21, 1993), aff'd, 74 F.3d 812 (7th Cir. 1996)(finding that federal defendants are not subject to the ADA); Jones v. United States, 2018 WL 10667778, * 1 (N.D.W.Va. Oct. 23, 2018)("Because the ADA, by definition, does not apply to the federal government or a federal agency, [plaintiff] cannot maintain an ADA claim against the BOP or its employees."); also see Majors v. United States, 2018 WL 4677865 (N.D.W.Va. Jan. 8, 2018)("The ADA does not contain a wavier of sovereign immunity and thus, does not apply to the Federal Government.") Based upon the foregoing, the undersigned respectfully recommends that Plaintiff's ADA claim against the BOP Defendants be dismissed.

**3.    FTCA:**

In his Amended Complaint, Plaintiff alleges that BOP Defendants acted with negligence in providing treatment for his shoulder pain/injury, respiratory and allergy problems, gastric issues, and back pain. (Document No. 13.) In their Motion, BOP Defendants contend that Plaintiff's claim should be dismissed because he failed to timely and properly file a screening certificate of merit pursuant to the MPLA. (Document Nos. 132 and 133, pp. 46 - 48.) Plaintiff failed to file a Response.

In his Amended Complaint, Plaintiff asserts a negligence claim under the FTCA against the BOP Defendants. (Document No. 13.) Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Plaintiff alleges that BOP Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit.

W. Va. Code § 55-7B-6.[8] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. <u>Stanley v. United States</u>, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); <u>also</u> <u>see</u> <u>Starns v. United States</u>, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point

---

[8]   West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

2, <u>Roberts v. Gale</u>, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the

instant case, Plaintiff first contends that BOP Defendants failed to provide appropriate treatment for his shoulder injury. (Document No. 13.) Specifically, Plaintiff complains that BOP Defendants failed to timely diagnose and treat his fractured shoulder and torn rotator cuff. (Id.) Plaintiff concludes that the foregoing resulted in significate wearing of the bones in his shoulder and the ultimate need for a complete shoulder replacement. (Id.) Second, Plaintiff contends BOP Defendants failed to properly treat his chronic and acute symptoms related to his sinusitis and respiratory issues. (Id.) The record reveals that Plaintiff was provided antibiotics and nasal spray on multiple occasions, but Plaintiff contends this was insufficient treatment. (Document No. 132-1, pp. 181 – 229.) Third, Plaintiff alleges that he received improper treatment for his gastric issues. (Document No. 13.) The record, however, reveals that Plaintiff was evaluated by an "outside" gastroenterologist. (Document No. 132-1, pp. 231 – 243.) To determine possible treatments options for Plaintiff's gastrointestinal issues, the need for a colonoscopy was explained to Plaintiff on two occasions and Plaintiff refused to undergo the procedure. (Id.) Finally, Plaintiff alleges he received improper treatment for his back pain. (Document No. 13.) The record reveals Plaintiff received MRIs and was evaluated by an "outside" physician that diagnosed Plaintiff with spinal stenosis. (Document No. 132-1, pp. 245 – 287.) The record further reveals that Plaintiff received multiple injections and pain medications, which included narcotic pain medication. (Id.) Plaintiff contends the foregoing was negligent treatment of his conditions. (Document No. 13.) The undersigned finds that a determined of whether the foregoing constituted negligent treatment of Plaintiff's conditions is not within the understanding of lay jurors by resort to common knowledge or experience. What constitutes appropriate diagnostic testing, timely treatment, risk factors, symptoms, and appropriate treatment options for a fractured shoulder, torn rotator cuff, respiratory and allergy problems, gastric issues, and spinal stenosis is not within the understanding of lay

jurors by resort to common knowledge and experience. See O'Neil v. United States, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); also see Curtis v. Caraway, 2019 WL 2482174, * 21 (N.D.W.Va. Jan. 28, 2019)(allegations that medical staff failed to timely diagnose and treat inmate's rotator cuff is a complex medical issue which requires a screening certificate of merit.); Giambalvo v. United States, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that Johnson "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). Neither is it within the knowledge of lay jurors as to the alleged connection in the delay of testing and treatment, and the resulting injuries alleged by Plaintiff. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). Accordingly, the undersigned respectfully recommends that Plaintiff's medical malpractice claim be dismissed.

**4.    Defendants Williams and James:**

The undersigned finds that the Defendants Williams and James should be dismissed due to the lack of service. Although officers of the Court are charged with *assisting* the Plaintiff with service of process under 28 U.S.C. § 1915(d) due to his *in forma pauperis* status, neither the Court nor the USMS, are required to be *advocates* for the *pro se* Plaintiff. The Court has no responsibility to continue to search for the location of any unserved Defendant for the purpose of perfecting service of process for the Plaintiff. In Skaggs v. Clark, 2015 WL 269154 (S.D.W.Va. Jan. 21, 2015), United States District Judge Robert C. Chambers stated as follows:

Notwithstanding the difficulties faced by an incarcerated plaintiff, it is not yet, and

cannot become, the role of the courts to track down defendants on behalf of incarcerated plaintiffs.[3] At a minimum, such plaintiffs bear the reasonable burden of identifying some address where service can be properly made. Only upon provision of such information – which is absent here – can the courts execute services.

Skaggs v. Clark, 2015 WL 269154, * 3 (S.D.W.Va. Jan. 21, 2015); also see Ray v. Pursell, 2017 WL 3707584 (S.D.W.Va. June 23, 2017)(same). The Court and the USMS have diligently attempted to effect service upon Defendants William and James based upon the information provided by Plaintiff. Specifically, the Court has made four different attempts to obtain service upon Defendants Williams and James based upon information provided by Plaintiff. (Document Nos. 15, 56, 95, and 117.) Each time, the information provided by Plaintiff was either incorrect or inadequate to effective service. (Document Nos. 47, 50, 74, 76, 98, 99, 127, 128.) Plaintiff has failed to provide the Court with any further identifying information for Defendants Williams or James. If a defendant is not served, Plaintiff will not be able to prevail on his claim against that person. It is Plaintiff's responsibility, and not the duty of the Court, to ascertain the identities and addresses of those individuals whom Plaintiff believes caused him injury. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Defendants Williams and James be dismissed without prejudice due to the lack of service.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** BOP Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 132), **GRANT** Defendant Zahir's Motion to Dismiss (Document No. 141),

---

[3] Although Plaintiff was incarcerated at the time of the filing of the above action, the Court notes that Plaintiff has since been released from prison.

**DISMISS** Defendants Williams and James without prejudice due to the lack of service, and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 16, 2020.



Omar J. Aboulhosn
United States Magistrate Judge